The next matter for argument, which is Kazar v. Slippery Rock. Kazar v. Slippery Rock Mr. Lieber, long time no see. I saw your name on the brief and saw the name of Mike Healy on the brief in the case just immediately preceding yours. I thought this was going to be old home week from Pittsburgh. Good morning, your honors. May it please the court. James Lieber v. Sheila Kazar. I think that Judge Block, in his opinion, made a principal legal error, which is that Title VII preempts Title IX. Let's jump right in on that. Your position is that even though your client could have brought a Title VII claim, and even though the federal government has now for decades established a comprehensive and pre-elaborate structure under statute and regulation for people who feel they've been the victim of employment discrimination to bring a federal claim under Title VII, and that that structure requires, following certain administrative steps and exhausting administrative remedies, that university professors are uniquely situated because they can ignore that set of rules and regulations, and under Title IX they can come and bring exactly the same complaint, and they're okay. That's the legal position you've got, that university employees as a class are the only group of people in America to whom the strictures of Title VII don't really apply because Title IX gives them an employment discrimination claim. That's the fundamental legal position, right? That is the position. I would say just in response to what you've offered, Judge Jordan, that university professors are not the only people. The statute is clear that it is no person, and that includes students, staff. But this isn't employment. This is not a, hey, I didn't get into the graduate program because I'm a woman. I was denied a scholarship because I'm a woman. This is I didn't get tenure because I'm a woman and because I'm a homosexual woman. Those are the allegations, and what you're saying is that employment discrimination uniquely in the country, that Congress meant for university employees to have a right that nobody else in the United States of America has, and that is the right to ignore the administrative requirements of Title VII and still bring exactly the same claim under Title IX. That's the pitch, isn't it? That is the pitch, but your honors have directed us to look at certain cases, and I would suggest to you that those cases are compelling, particularly Johnson v. Railway Express Agency, where there was an issue whether Title VII preempted the 1866 Civil Rights Act, right? That's correct. So isn't it a pretty different thing to say, well, when Congress legislated the Civil Rights Act of 1964, it didn't mean to displace a literally century-old Civil Rights statute. Isn't that a very different thing than saying when Congress legislated the Civil Rights Act of 1964 and then amended it in 1972 with a comprehensive scheme of which Title IX is one title and Title VII is one title, that in that overall program, they didn't mean to do it in a harmonious way? Because what you're really saying is, in setting up one set of statutes within close temporal proximity to one another so that the titles of the same statutory setup, they meant to actually overlap and create a redundancy. This is Judge Block's argument that there is a comprehensive scheme under Title VII. He adopts the minority view of Fifth Circuit, which is at odds with all the case law and trial case law. Aside from the Likosky case, though, fundamentally, don't you believe that there is some value to the administrative procedures that exist under Title VII? And don't you think Congress had to see such value to have included them in Title VII in the first place? Well, I think that Congress didn't do that. And when the amendments came up pertaining to educational employment under Title VII and Title IX, which I believe was within months in 1972, Congress could have spoken. It did not. So I don't think that Judge Block, he doesn't deal with the legislative history, and I don't think he could. I think if Congress wanted that, it would have spoken. And I would also add that Title VII and Title IX do not overlap in toto. Well, they don't overlap in toto, but in your reading of it, they certainly overlap into this, that a plaintiff can just blow off the timelines and the responsibilities that go with bringing a Title VII claim and bring the exact same claim with a different Roman numeral. All the same allegations, seeking the same relief, and just say, well, yeah, I work for the university, so I got a pass. Take me on Title IX. Respectfully, I disagree. Well, what's different in your claim? I think that the plaintiff did comply with the law. With Title VII? With Title IX. There is an established statute of limitations. This is a matter that was dealt with in Johnson v. Railway Express. But shouldn't we also, thinking about some of the things you're saying, they overlap, but there are some differences. When Congress enacted Title VII, it chose to put in a complex administrative scheme. When Congress enacted Title IX, it didn't do that, but it still had notice requirements to the allegedly discriminating entity. And aren't we supposed to accept the proposition that when Congress acts, it knows of its existing law at the time it's acted? And so when it acted and enacted Title IX, it knew about Title VII. It knew about its administrative scheme, but chose something different by way of the notice provisions. Would you agree that that's something we should consider, or maybe that's not relevant? Well, I would suggest to you that if Congress passes two laws with two different statutes of limitations and doesn't say that one preempts the other, no, I do not agree that you should act. I think that would be acting against the will of Congress. Congress actually had the opportunity to act. The legislative history, which is, I believe, set out in North Haven, shows that Congress had the opportunity to do this, and they did not. So you can make a pretty strong argument on the other side, and Justice Powell did. Granted, it's dissent, but it's a pretty strong argument in dissent that the legislative history doesn't read the way the Supreme Court majority read it. But that's neither here nor there, right, because he was in dissent, and the North Haven majority said they were prepared to imply a private right of action under Title IX. That's a win for you for sure, right, because that shows there is some kind of private right of action under Title IX. The question is, do you get an employment discrimination claim under Title IX? So what is your best case on that? Because you got some firepower for that, but what is it? Well, I would say that Bell is a very good case, North Haven versus Bell, where Justice Blackmun wrote, there is no doubt that we are to give Title IX the scope that its origins dictate. We must accord it a sweep as broad as its language, and its language does include employment. I think that – When you say its language does include employment – Title IX's language does. Show me where in Title IX the word employment surfaces. Title IX provides in pertinent part, no person in the United States, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving federal financial assistance. That's right. The word employment does not emerge there at all. So it has to be something that is implied. One has to not only say, oh, after Bell, we imply a private right of action, but has to further say, we imply that that private right of action comprehends an employment discrimination claim. Right? Well, I would say that it must comprehend an employment discrimination claim, that the United States Supreme Court has taught that this is a remedial statute, that its sweep is broad. But the way we construe remedial statutes doesn't by itself get you past the goal line in terms of what this language means. Can you point us to any case that has taken language akin to, similar to, denied the benefits of, or be subjected to discrimination under any education program or activity, anything similar to that, that has been construed to include employment? Yes. Yes, Your Honor. I think that the best case for that is the recently decided case in Winner v. Penn State University, in the Middle District, where there was a comprehensive reading of both the judicial history and the legislative history, and Judge Caputo said, I am persuaded that if Congress intended for Title VII to preempt employment discrimination claims under Title IX, it could have drafted Title IX, which was enacted after Title VII, to state as much. Instead, Title IX was drafted to cover any person, not just any student, and therefore does indeed cover employees alleging claims of employment discrimination. Judge Caputo, did he cite and rely on the Jackson case at all in that case? I cannot remember if Judge Caputo cited Jackson. I believe he may have, but I would have to go back and read his decision again. What he cited was the Supreme Court trilogy of Cannon v. University of Chicago, North Haven Board of Education v. Bell, and Franklin v. Gwinnett County Public Schools. Right, and Jackson comes after all those, comes in 2005. Does that help you, and if so, how? Well, I think that Justice O'Connor in Jackson said that she, again, she cited Cannon and Franklin and stated that the Supreme Court relied on the text of Title IX, which broadly prohibits a funding recipient from subjecting any person to discrimination on the basis of sex. And she said that, what did she say about Title IX? That it was seeking to prohibit discrimination by recipients of federal funds, right? That's right. And so she said these are vastly different statutes, right? That's what Jackson says. Title VII and Title IX are vastly different. I'm sorry, Judge Schwartz. I don't understand what you're saying. I would like to reserve a couple of minutes, if I may. I didn't go over that at the beginning. But we already, yeah, we will recount. Okay. I think my question follows up on Judge Jordan's is, going back to Jackson, doesn't the court, in the very section you're starting to recite, begin by saying Title IX and Title VII are vastly different statutes? I don't remember if it used the term vastly. It did point out that they are different statutes, and that's part of my argument, that the comprehensive scheme of Title VII is actually not comprehensive. There are certainly employers and educational institutions that are not covered under Title VII. There is no numerosity requirement, jurisdictional requirement under Title IX. There is no damages cap under Title IX. So a person could make a choice of law and get different remedies. Mr. Lieber, have you effectively conceded that if there is no Title VII preemption here, that Title VII standards are applicable to Title IX? Yes, there's no question of congruency, and I think that the law has developed that way. Title VII remedies are often seen as precedential, at least persuasive, with regard to Title IX. There's no question about that. I agree. All right, thank you. We'll have you back on rebuttal, Mr. Lieber. And I think the last time you were before us, you've been here before, I believe. I mispronounced your name, and I want to make sure I get it right this time. Mr. Grishley. I would have followed it up again. Your Honor, I can't expect anyone outside of those who have been here before to know the Turkish language to understand that C is pronounced as a C-H. Don't give me so much credit. I've been to Turkey twice. So one more time, how do you say your name, sir? Mr. Grishley. Mr. Grishley. Yes. Can you pick up right where Mr. Lieber left off with Jackson? Yes. How does Jackson undercut your reliance on Likoski? No, and here's why. We have a wonderful guide in the Jackson opinion itself, which links us to the viability of Likoski, notwithstanding the fact that Jackson says there's a private right of action for retaliation under Title IX, and retaliation, of course, is a species of discrimination. I mean, how is that not game up for you? Here's how. First, if you look at Jackson, it's retaliation for opposition to noncompliance with the requirements of Title IX for the student. It's not retaliation for specific employment discrimination. If you look at the retaliation claim in Jackson, Mr. Jackson could not have brought that claim under Title VII because Title VII only permits you to bring a claim for retaliation for an unlawful employment practice. That was not an unlawful employment practice. Therefore, what Jackson is addressing is a situation where there is a retaliation claim under Title IX that cannot be asserted within the comprehensive and balanced remedial scheme of Title VII. Jackson doesn't say that, though, right? No, it does. You're saying that we can slice the bologna that thin, but if we read Cannon, and then Northaven v. Bell, and then Franklin, and then later Jackson, doesn't it look like the Supreme Court marches steadily towards saying what Mr. Lieber is saying, which is we're okay with the Supreme Court in reading Title IX and Title VII. We are a-okay with the notion that there is a private right of action under Title IX, and it covers employment discrimination. Retaliation is just one variety of discrimination, and it's all good. And if there's an overlap, there's an overlap. We did that in Johnson. So what? What's wrong with that line of discussion? A line of discussion supplemented, I might add, by the fact that aside from Murkowski, I believe every court of appeals to have addressed the question has not found preemption, right? Well, the Sixth Circuit's opinion on that are both in cases that are non-precedential. But the Fourth Circuit never addresses it. It just presumes that there's no preemption. Put aside the math. Isn't, as Judge Jordan's question suggesting, that the march is in a direction other than the direction you would have us march? No, because I think there's also the Fourth Circuit's case, Hinton, which is a preemption case and is much more recent than those cases. So there are district court cases that find that. The only authoritative court of appeals case is Lukoski. But that was before Jackson. Hold on just a second. I'm sorry, but if you don't speak into the mic, then when we go back, because sometimes memory not being what it was in my youth, I like to go back and listen and hear what the lawyers have had to say. And if you're not talking into the mic, it won't pick up. Justice O'Connor in Jackson cites Lowry v. Texas A&M twice. Lowry v. Texas A&M is a case that had to come to grips with. It's a precursor of Jackson. It holds the same way Jackson holds. It's from 1997, though, and Jackson's from 2005. She begins her analysis right after the sentence that begins, with compare Lowry v. Texas A&M. Now, what we do then is go back to Lowry v. Texas A&M, which she later cites at another point in her opinion very favorably. What Lowry had to deal with was it's a Fifth Circuit case. Lukoski precedes it. It's a 1995 case. It cannot overrule a presidential opinion in its own circuit. It had to follow the preemption. Yet, at the same time, it wanted to find retaliation for a coach complaining about the same thing that the coach in Birmingham Board of Education was complaining about Jackson. That is, that his girl's high school team was not being treated fairly under Title IX. Here, the difference was that Coach Lowry's team was a woman's team and an aspect of the Texas A&M University system. Now, other than that, they're the same case. They found retaliation. They found retaliation even though they were forced to admit preemption applied. How did they do that? They did that by- So, your legal argument is that Justice O'Connor meant to distinguish employment discrimination claims other than retaliation for complaining about Title IX violations. And she meant to do that without saying it. But she meant to do it, we can tell, because she cited the earlier case which approved the Fifth Circuit case which distinguished Lukoski. That's your arc of reasoning, right? Absolutely. Now, if the court were really going to make that distinction, don't you think they might have done it more clearly than the sort of tea-leave reading that you've just- and I don't mean that in a degrading way, that's perfectly sound legal reasoning, but it's certainly not evident from the face of the Jackson opinion, is it? No, it isn't. But they do cite Lowry, and in Lowry, it couldn't be more clearly stated that the point I previously made, that retaliation for opposition to Title IX noncompliance is not actionable under Title VII, hence not preempted. Now, Lowry does spell it all out, and Lukoski certainly spells out preemption very well. So, in the Fifth Circuit, there is a coherent, cogent body of law that, when applied to Jackson, would explain it away as a preemption case. That's the best I can do. What do we do with the language Judge Schwartz pointed out, which is in Jackson itself where it appears that Justice O'Connor is going out of her way to say, look, we're not going to trip over Title VII when it comes to a Title IX discrimination case because they're just very different things. The language is vastly different. Quote, Title VII honor is a vastly different statute from Title IX. Unquote. These are different things, and so we're not going to say one, I mean, implication, we're not saying one preempts the other. They're doing different stuff. Well, the problem with that is you can look at it in different ways, and Judge Hickenbottom's opinion is tied and consistent with his circuit's later decision in Lowry is, yes, Title IX is very different. It's much more capacious than Title VII. It extends beyond unlawful employment practices. But the question is, to the extent that this capacious statute includes unlawful employment practices, why should we privilege employees of educational institutions uniquely to just go into federal court? If that was true, why do we prevent people from using Title VII in conjunction with Section 1983 and just walking into court and saying, my federal statute that's violated is Title VII? Judge Hickenbottom bought them in Likosky 6. I don't think the specifics should trump the general understanding. Of course, those were arguments that were made in effect and lost in earlier decisions in the Supreme Court, right? I mean, wasn't that same kind of reasoning being put forth in Northaven v. Bell while Justice Powell was trying to get the majority to understand that it's problematic for you to be ignoring Title VII and letting HHS go off and regulate employment stuff here as if Title VII didn't exist? That was a heck of a good argument, and it turned out to be a heck of a good dissent, and it was a dissent. It was lost. The two Supreme Court decisions that we have not breathed a word about this morning, however, support me if they're read in a very broad, I don't say me, I say Slippery Rock University, supports Slippery Rock University if they're read in a very broad way. No federal employee, and there are substantive rights in addition to Title VII, no federal employee can complain about employment discrimination save through Title VII. That's Brown v. the General Services Administration. And the other case, which comes from Pittsburgh, is Great American Savings and Loan Association v. Novotny. And they say that even though it's a Civil Rights Civil War Reconstruction Year of Statute, the Conspiracy Statute of Section 1985, Sub 3, that that statute cannot be utilized for employment discrimination purposes, that instead it has to be Title VII. But Johnson says Title VII is not the exclusive remedy for employment discrimination, and in that case they were comparing Title VII and Section 1981. Pardon me? Which case? Johnson. Johnson, yes. But Johnson v. Railway Express Association was glossed and interpreted and distinguished by Justice Stewart in Novotny particularly. He said it should be read as limited to Civil War-era, Reconstruction-era statutes that create substantive rights. What about Fitzgerald, which says Title IX is not the exclusive way to address gender discrimination in school? That's a student case. Nonetheless, it's talking about discrimination in the schools. It might be a student case, but your point in talking about the Sea Clambers type cases is that Congress speaks about when it has a statute in front of it with an administrative matrix for resolution, and when that does not, we are to be mindful of whether that matrix is being, somebody's trying to bypass it. And so we have circumstances where the Supreme Court, looking at Title IX, is allowing other types of claims to proceed, whether it's Johnson or whether it's Fitzgerald. That's indeed, let me suggest with all due respect and deference, let's not fool ourselves. We have language, broad-based, untethered language for both sides here all over the place. So you come down to what Judge Hickenbotham wrestled with in Likoski, and as the bench, you have to decide. He did wrestle with that, but he wrestled with it a pretty long time ago, and it was before some of the other pertinent decisions here, most particularly Jackson. Now I understand your argument from Brown. Are you okay? Yes, I'm fine, thanks. I understand your argument from Brown. Maybe you could tease that out a little bit more for us. I mean, what is it about, what is it in the Brown decision where the Supreme Court says, yeah, you can only go under Title VII if you're a federal employee, that makes you believe it has application here when Title IX and Title VII are in conflict? No, I recognize, Your Honor, that it was a question. But you pose the question of how can you privilege these people uniquely for their employment discrimination? Why is it any more hurtful than employment discrimination against a postal worker for sexual discrimination? Why is a postal worker required to go through the balanced, careful, comprehensive, structured remedial scheme, which puts a great emphasis on the exhaustion of administrative remedies before you go to a district court, and a college professor is not? You don't have to persuade me that there's a logical problem there. Yes. What you do need to persuade us, though, is that Brown, in the face of Jackson, means we can run down the field, so to speak, the way you've described, without getting a real hard tackle by the Supreme Court based on its quartet of cases, because it's not a trio anymore, of Cannon, Bell, Franklin, and Jackson. Well, Cannon, Bell, Franklin, and Jackson, with the exception of Jackson, Cannon, Bell, Franklin, and Fitzgerald are all cases that really do not have anything to do with employment discrimination. They have to do with the other aspects of rights against sexual discrimination in Title IX, athletics, education, things like that, private rights of action for the students. So that's a distinction. They're not employment discrimination cases. The closest one is Jackson. And I would say to you that those cases that... Here's how I read all the district courts. The preemption district courts say, how can we just allow all these people the easy road to the district court? We can't. Everybody else has to use AOC. You should, too. Now, on the other hand, they say, this does not say you have to use the EEOC. This must therefore be, the non-preemption cases, an additional right, an additional right like the Civil Rights Act of 1866. And I think it all depends on what you feel as a bench. I don't think I can help you anymore with legal arguments. I think I've done the best I can in that respect. I would like to ask about this notice thing. As I understand it, Title VII has its administrative framework. Yes. Title IX has a pre-suit requirement that notice is given to the alleged offender institution, right? Yes. And the Supreme Court in Gesser has read that in as an implied requirement for private rights of action. Yes. Now, taking that prism, doesn't that tell us that Congress knows when it wants to impose a comprehensive administrative scheme and when it does not? That is, in Title VII it made an election. Some years later, when it enacted Title IX, it did not include such a scheme but included a notice requirement. And aren't we supposed to infer from that that Congress is aware of its existing law at the time it enacts a new statute and makes intentional decisions about it? So isn't that another indicator for us to view Title IX as being allowed to proceed on its own way, assuming there's notice given? And whether there's notice given in this case is a whole different story. Well, certainly it's not pleaded that it was given. Of course, there was a plea that says, Plaintiff alerted the administrators about discrimination. The question is whether the summary judgment record even demonstrates that. But back to my question about the statute. Certainly that's a way of logically and legally thinking about things. But then I would go back to Judge Hickenbottom's analysis of the congressional history and say originally when they sat down, Title IX was supposed to be what? Filled a gap in Title VII that didn't exist. But the Equal Opportunity Act of 1972, which is Title IX, beat the Title VII amendment to the punch. And so as a result, it was enacted after or rather the amendment of Title VII beat Title IX to the punch. So it was enacted in a way that made it redundant or no longer necessary. Yet it's clear from the way the House and Senate discussed the law originally, when it originated, that they would say let's put this Title IX out there. It will plug that gap in Title VII so nicely for non-employment related discrimination and also employment discrimination in federally funded places. And then subsequently that gap was ameliorated in Title VII anyway and then a couple of months later Title IX was enacted. So we have that history too. So I think the problem with history goes back to what Chief Justice Marshall said when we all started and that is, you know, one searches and grasps at any possible way of understanding what was in the mind of Congress when it enacted something. Well, that's a very, very fine place to end your presentation. Thank you. Mr. Marachli, thank you very much. We'll hear from Mr. Lieber in rebuttal. And hopefully I've finally gotten your name's pronunciation down. Perfectly so. Thank you. Your Honors, I'd like my two minutes to make two points, if I may. I think that it's significant that in its decision in Bell, the Court looked into the legislative history and looked into what, for example, Senator Bye said. The heart of this amendment is a provision banning sex discrimination in education programs receiving federal funds. The amendment would cover such crucial aspects as admissions procedures, scholarships, and faculty employment. Right. And that's one senator on the record. So, you know, you can do a lot. A prime sponsor, but yes, just one. And so that everyone is clear, this was Birch Bye, the father of the later Senator Bye. Right. With the limited time you've got, could you respond please to Mr. Marachli's argument that Jackson is distinguishable. Jackson does not mean that all employment discrimination claims are open under Title IX. It was a very specific and limited statement that a retaliation claim based on asserting Title IX rights on behalf of, that is, discrimination against a team on the basis of sex, that that kind of retaliation claim is uniquely suited to Title IX. It couldn't have really been raised by the students themselves under Title VII, and that makes it special. So it's different, and it doesn't cover, it doesn't have the extent that you're arguing for. Well, that's, Mr. Marachli's a good lawyer, and that's his argument. But it's not vindicated in any law, and it's not vindicated in terms of preemption law. Well, you have to attack the logic of it. Is it illogical? Yes, it is. Because? Because there are three types of preemption. There's express preemption, which we don't have from Congress. There's field preemption, where one law totally covers the field of the other law. We don't have that. And there's conflict preemption, where the operation of one law would impede the operation of the other. So this is the settled law of preemption through all federal jurisdiction. Ordinarily, it applies to the states, of course, and maybe we have a different argument today if we were talking about the Pennsylvania Relations Commission. It might help if we just stayed away from the word preemption, because it's freighted with all this discussion that you've just set out. And we ask ourselves, as a matter of statutory interpretation, does it make sense to read Title IX to give the right to your client that you assert it does? With that as background, what's wrong? Shoot the hole in his assertion that Jackson can be distinguished in the way he just attempted to distinguish it. I don't understand why it is distinguishable. I think it's consistent. It's consistent. Let's leave the word preemption aside. You still need the heart of all these cases is what is the intent of Congress. And the United States Supreme Court has already determined that this applies to faculty employment. It has read the legislative history. Now, I know Senator Bayh is not the principal. Well, maybe he is one of the principal people, but he's not all the people. But there's no contradictory legislative history. The legislative history that we have and that the United States has adopted, the United States Supreme Court has adopted. There is contradictory history, and your opponent just cited it for us. And I'll repeat. Justice Powell cited it at length in Bell that Title IX was intended to fill a gap that had been left in Title VII, and it was not meant to go beyond it and create redundancies. That's the assertion. But staying away from the legislative history, you just said the Supreme Court has said it. The Supreme Court has said it applies to employment discrimination. Other than Jackson, is there a case that you're relying on to say that the Supreme Court has said that Title IX applies to employment discrimination? Got anything besides Jackson? Justice Blackmun's language in Bell says that it does apply. The government even says it applies. The Department of Justice says that Title IX and Title VII are separate enforcement mechanisms. Individuals can use both statutes to attack the same violations. But this view is consistent with the Supreme Court's decisions on Title IX's coverage of employment discrimination, as well as the different constitutional bases for Title IX and Title VII. And I would suggest that the court, I don't know that I cited this case, but look to Summa v. Hofstra University. It's a Second Circuit case in 2013. I don't think there's any basis for what we are calling preemption. There is an opinion by the Attorney General in this case, but I don't think it's vindicated either in the law or in the federal government or otherwise. All right. We understand your position, Mr. Lieber. Thank you, sir. Thank you very much to counsel. We have chosen with this oral argument to single out what is a very important and critical and fascinating issue. We thank you for your help, and we'll take the matter under advisement. With that, we're going to take a five-minute recess.